IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

EDDIE CLELAND

VS.                                          CIVIL ACTION NO. 2:13cv9-KS-MTP

ACADEMY SPORTS AND
OUTDOORS; AND
LOUIS TENNEY, INDIVIDUALLY

**OPINION AND ORDER DENYING MOTION TO REMAND**

This cause is before the Court on Plaintiff's Motion to Remand [8] and the Court having reviewed the motion, responses, briefs of counsel, authorities cited and pleadings, and being fully advised in the premises, finds as follows:

**FACTUAL BACKGROUND**

Plaintiff, Eddie Cleland ("Cleland"), was a department manager at the Hattiesburg store of Defendant, Academy Sports and Outdoors ("Academy"). Academy hired Cleland as a department manager in training in September of 2010 for work in its future Hattiesburg, Mississippi store. As other employees of Academy, he was an at will employee. From the time of its opening in November 2011, Defendant, Louis Tenney ("Tenney"), served the Hattiesburg store as the store director, which the Court interprets as functioning similarly to a store manager. He was Cleland's immediate supervisor.

Academy claims that Cleland had some performance issues and engaged in inappropriate conduct. (Unrebutted Affidavit of Louis Tenney [13-1, p.1]). On July 29, 2012, Cleland edited other employees' time sheets without their consent and without following Academy procedure. As a result of the inappropriate conduct, Tenney issued Cleland a warning and Cleland

1

acknowledged the discussion concerning his performance and the action that was needed. A memo from Cleland to Tenney specifically addressed the July 29, 2012, issue of editing associates' time sheets [13-1, p.4]. On August 11, 2012, Cleland again violated procedures by changing an associate's time sheet without authorization and the violation was almost identical to the violation of July 29, 2012. On September 17, 2012, another written corrective action was issued to Cleland, and district manager Darryl Fletcher approved this measure. Cleland acknowledged the "FINAL Written Corrective Action." [13-1 p. 6]. On August 18, 2012, which was after the second event but before the second corrective action, Cleland sent an email to Academy Human Resources complaining of several purported illegal and unethical activities in which Tenney was directing or participating in. The email contained statements that Tenney requested Cleland to alter and/or forge information located on ATF form 4473s in order to keep customers from having to come back to the store and make the corrections themselves. The email further complained that Tenney was discriminating against Cleland and other employees based upon their political affiliations. Tenney is a Democrat and Cleland is a Republican.

Cleland further alleges that he was otherwise discriminated against by Tenney who sought to wrongfully terminate him from his employment at Academy. Cleland further states that Tenney fostered a hostile work environment by holding Cleland to higher standards than any other managers. Finally, Cleland alleges that Tenney would harass and demean him because of his political affiliations.

The original complaint was filed in the Circuit Court of Lamar County on December 12, 2012. On January 18, 2013, the Defendants removed this case to this court alleging that Tenney had been improperly joined and, thus, this Court has jurisdiction by virtue of diversity. 28 U.S.C.

§ 1332. On February 6, 2013, Plaintiff filed the instant Motion to Remand [8]. Plaintiff contends that his joinder of the non-diverse Defendant, Tenney, was proper. Plaintiff does not challenge Defendants' assertion that the amount in controversy meets the federal jurisdictional minimum.

## STANDARD OF REVIEW - REMAND

The Fifth Circuit has consistently held that the party urging jurisdiction upon the District Court bears the burden of demonstrating that the case is one which is properly before the Court. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Village Fair Shopping Center Co. v. Sam Broadhead Trust*, 588 F.2d 431, 433 (5th Cir. 1979).

When fraudulent joinder is asserted the Court ignores all "non-diverse parties on the record in state court at the time of removal." *Borden v. Allstate Ins. Co.,* 589 F.3d 168, 171 (5th Cir. 2009) (quoting *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999)). The Court may pierce the pleadings and consider summary judgment type evidence, such as affidavits and deposition transcripts. *Hart v. Bayer Corp.*, 199 F.3d 239, 246-47 (5th Cir. 2000). In determining whether there is a valid claim for fraudulent joinder, the Court must view all facts and resolve all ambiguities in the controlling state law in favor of the plaintiff. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

The removing party bears the burden of demonstrating that jurisdiction is proper due to fraudulent joinder. *Dodson v Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). "The burden of persuasion placed upon those who 'cry fraudulent joinder' is indeed a heavy one." *Hart,* 199 F.3d at 246. There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action

against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Rather than a "mere theoretical possibility of recovery... there must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Travis*, 3 & 6 F.3d at 648 (citing *Badon v. R. J. R. Nabisco, Inc.,* 236 F.3d 282, 286 N.4 (5th Cir. 2000)).

In this case the defendants argue that Cleland will not be able to establish any of his counts against Tenney, i.e., (1) tortuous interference with employment, (2) intentional infliction of emotional distress, or (3) defamation.

## CLAIM

**Applicable Law**

The circumstances of this claim are somewhat unusual. A direct supervisor (Tenney) is being sued, along with his employer (Academy) by an employee of Academy and a direct subordinate of Tenney (Cleland). Mississippi is an at will employment state and Cleland was an at will employee of Academy. The agreement that was alleged to have been interfered with was the employment of Cleland by Academy. In order for there to be a tortuous interference with employment suit there must be (1) an employee, (2) an employer and, (3) an interfering party.

Because of the special nature of the relationship in this case, Tenney is required by his job duties to supervise and report to his superiors regarding the employment of Cleland. Out of his job responsibilities Tenney is required to say things, good and bad, about the performance of Cleland.

**Their employer, Academy**

4

It is part of Tenney's job description to report on an employee's performance. Therefore, case law has developed a privilege for these communications between an employee and his employer. An opinion by Judge Southwick in *Morrison v. Mississippi Enterprise for Technology, Inc. Etc*, 798 So. 2d 567 (Miss. App. 2001) states succinctly the law at issue in this case.

> Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. *Shaw v. Burchfield*, 481 So. 2d 247, 254-55 (Miss. 1985). Tortuous interference even with at-will employment can be the basis of a claim. *Levens v. Campbell*, 733 So. 2d 753 (Miss. 1999).
>
> However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Shaw*, 481 So. 2d at 255. Meredith was an employee of USM, serving as the director of the Center for Higher Learning at the Stennis Space Center. Importantly here, he also served as the chairman of MsET's board of directors. The lower court was correct that Meredith occupied positions of responsibility as to the employment [of] Morrison, and as such his actions were privileged unless they were taken in bad faith. *Morrison*, 798 So. 2d at 574.

As this applies in the case at bar the communications of Tenney with Academy concerning Cleland would be privileged unless it can be shown that the communications were in bad faith. Absent said bad faith, Tenney's statements are privileged and non-actionable. *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999); (*See also Vaughn* v. *Carlock Nissan of Tupelo, Inc.,* 2011 W.L. 3651271, at *6 (N.D. Miss. Aug. 18, 2011); *Graham v. Wal-Mart*, 2012 W.L. 1565106, at *3 (N.D. Miss. May 2, 2012)).

**Bad Faith**
In order to prove tortuous interference with a contract, a plaintiff must normally show

5

these elements:
1. The acts were intentional and willful;
2. That they were calculated to cause damages to the plaintiff in his lawful business;
3. That they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and
4. That actual loss accrued. *Morrison*, 798 So. 2d at 575 (citing *Levens* 733 So. 2d at 760-61).

The words "bad faith" add very little to the requirements above. If the actions were done willfully, maliciously, and with the unlawful purpose of causing damage to Cleland, then bad faith has been proven.

**What Cleland alleges Tenney did to interfere with his contract of employment with Academy.**

In the amended complaint and as expanded by his briefing, Cleland claims the following:

(A) Tenney made it very clear that he strongly disagreed with Cleland's political beliefs and, as a result, created and fostered a hostile work environment for Cleland.

This in no way alleges a claim of interference with the employment contract of Cleland with Academy.

(B) Tenney polled Hattiesburg Academy employees as to who they were voting for in the upcoming election and if the employees refused to participate or expressed a preference for Republican candidates, Tenney would refer to them in a degrading manner as "conservatives" and harass them for their political views.

This also, in no way states interference with Cleland's contract of employment.

(C) Tenney informed Cleland and other Hattiesburg Academy employees that if they would change their conservative political beliefs and instead support Democratic

6

Party candidates, the employees' rise "up the ladder" at Academy would be quicker and easier.

Likewise, this in no way makes an allegation of anything that was done by Tenney to interfere with Cleland's employment with Academy.

(D) Tenney held Cleland to an improper standard which differed from any standard applied to any of the other managers or staff at Hattiesburg Academy. As a result of Cleland's political beliefs, Cleland was given tasks and responsibilities that were outside of Academy's officially articulated expectations. Despite these higher standards, Cleland complied.

Likewise, this in no way makes an allegation of interference with the contract of employment.

(E) Tenney asked Cleland to forge information on ATF Form 4473, which is the form required in order to purchase firearms at Academy.

Neither does this make any allegation as to what Tenney did to interfere with the contract of employment.

(F) Cleland explained and complained to Tenney regarding improperly obtaining federal firearms forms, turning a blind eye to Hattiesburg Academy associates being permitted to cheat in order to become certified to sell firearms, and allowing employees to take a training test known as LMS modules for other Hattiesburg Academy employees in order to avoid paying employees for the time necessary to take the test themselves.

7

The same for this one, no allegation is made as to the interference with the contract.

The inference that is attempted to be made by Cleland is that Tenney told things to Academy that were untrue and malicious with the goal of causing Cleland to lose his job. This Court has seen nothing that indicates that and *ipse dixit* is not sufficient to establish the claim.

For the reasons above stated, the Court finds that Cleland has failed to state an arguable reason for predicting that state law would allow recovery on his tortuous interference with contract claim.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"An action for the intentional infliction of emotional distress occurs 'where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally... the results being reasonably foreseeable... even though there has been no physical injury.'" *Pegues v. Emerson Electric Co., et al,* 913 F. Supp. 976, 982, ((quoting N.D. Miss. 1996) *Sears Roebuck & Co. v. Devers*, 405 So. 2d 898, 902 (Miss. 1981)). *Pegues* continues:

> Comment d to Section 46 [Restatement (Second) of torts offers the best explanation of this tort:
>
> One who by extreme and outrageous conduct intentionally and recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm....[G]enerally, the case is one in which the recitation of the fact to an average member of the community would arouse as a resentment against the actor, and leave him to exclaim, 'outrageous.' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.
>
> Restatement (2d) of Torts § 46 cmt. d. Furthermore, it has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been

> found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* at 982.

While Cleland alleges that Tenney acted in bad faith and states some discreet facts regarding things that were done by Tenney to him and other employees at the Hattiesburg store, the statements are conclusory and non-specific as to the actions of Tenney that were intentionally done to inflict emotional distress on Cleland. By no means did they rise to the level stated above. Therefore, this Court finds that Cleland has failed to establish an arguable reasonable basis for predicting that state law would allow recovery for intentional infliction of emotional distress and Cleland has not established a basis for this claim.

## DEFAMATION

To establish a claim for defamation in Mississippi, a plaintiff must prove the following four elements:

1. A false and defamatory statement concerning plaintiff;

2. Unprivileged publication to third parties;

3. Fault amounting at least to negligence on the part of the publisher; and

4. Either actionability of the statement irrespective of special harm or existence of special harm caused by publication. *Simmons Law Group P.A. v. Corporate Management, Inc.,* 42 So. 3d 511, 517 (Miss. 2010).

Cleland must first show a false and defamatory statement that is not privileged when published to Academy. He has not shown any statements and fails in establishing this claim. Without more, he cannot go forward. The Court finds that plaintiff has failed to establish an arguable basis that he would succeed on a claim for defamation.

## CONCLUSION

For the reasons above stated, this Court finds that the Motion to Remand is **denied**. Further, since there is no controversy between plaintiff and Tenney, Tenney is dismissed as a party defendant. Said dismissal is without prejudice.

The parties are instructed to contact Magistrate Judge Michael T. Parker within fifteen (15) days of this Order for scheduling a case management conference.

SO ORDERED on this the 9th day of May, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE