IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

EDDIE CLELAND                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 2:13cv9-KS-MTP

ACADEMY SPORTS AND OUTDOORS                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss [6] of the Defendant

Academy Sports and Outdoors ("Academy")[1] and the Motion for Leave to File Second

Amended Complaint ("Motion for Leave") [17] of the Plaintiff Eddie Cleland.  Having

considered the submissions of the parties, the record and the applicable law, the Court

finds that the Motion to Dismiss [6] should be granted and that the Motion for Leave [17]

should be denied.

## BACKGROUND

Academy hired Eddie Cleland as a manager in training in September of 2010 to

work at its Hattiesburg, Mississippi store.  Cleland began working at this store as a

department manager in November of 2011.  Louis Tenney was the store director and

Cleland's immediate supervisor at this location.  Cleland's employment with Academy

was terminated on November 6, 2012.

On December 12, 2012, Cleland filed suit against Academy and Tenney in the

Circuit Court of Lamar County, Mississippi, asserting numerous state law claims relating

---

[1] The Defendant asserts that it is incorrectly identified in the caption and that its correct title is "Academy Ltd. *d/b/a* Academy Sports + Outdoors".  Any potential misnomer in the case caption is not dispositive of any issue before the Court, and the Defendant will be referred to as "Academy" for purposes of clarity and convenience.

to the termination of his employment.  (*See* Compl. [1-2].)  Cleland alleged that he was treated unfairly and harassed by Tenney because of his political beliefs:  Cleland is a conservative Republican, whereas Tenney is a liberal Democrat.  (*See* Compl. [1-2] at ¶¶ 8-9, 21.)   Cleland further asserted, *inter alia*, that Tenney asked him to forge information on ATF Form 4473, which must be completed for an individual to purchase a firearm from Academy.  (*See* Compl. [1-2] at ¶ 14.)  Cleland complained to Tenney and to upper management about Tenney's alleged discriminatory, unethical and illegal actions.  (*See* Compl. [1-2] at ¶¶ 16-18.)   Academy terminated Cleland for poor work performance, which, according to Cleland, was a pretext for his refusal to participate in criminal and unethical activity; his reporting of illegal and unethical activity to Academy supervisors; and his political beliefs.  (*See* Compl. [1-2] at ¶¶ 19-21.)

On January 14, 2013, Cleland filed an Amended Complaint [6-1] in the state court asserting the following causes of action:  defamation (against Academy and Tenney); malicious interference with employment (against Tenney); intentional and negligent infliction of emotional distress (against Academy and Tenney); discharge in violation of public policy (against Academy); breach of contract/good faith and fair dealing (against Academy); negligent retention/supervision (against Academy); and negligence per se (against Academy).

On January 18, 2013, Academy and Tenney removed the proceeding to this Court on the basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332. (*See* Notice of Removal [1].)  On February 6, 2013, Plaintiff moved for the remand of this action to the Circuit Court of Lamar County.  (*See* Mot. to Remand [8].)  Plaintiff argued that complete diversity of citizenship was lacking in light of his and Tenney's

Mississippi citizenship.  On May 9, 2013, the Court entered its Opinion and Order Denying Motion to Remand [16], finding that Tenney had been improperly joined and dismissing him from the litigation without prejudice.

Currently pending are Academy's Motion to Dismiss [6] and Cleland's Motion for Leave [17].  The Motion to Dismiss [6] was filed on February 5, 2013, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]  Cleland's Motion for Leave [17] was filed on May 13, 2013, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The Court has fully considered the parties' submissions and is ready to rule.

## DISCUSSION

### I.      Academy's Motion to Dismiss [6]

#### A.      Standard of Review

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting

---

[2] Resolution of the Motion to Dismiss [6] was stayed pending the Court's ruling on the remand issue.  (*See* Order [12].)  Although Academy and Tenney both filed this motion, only Academy's request for dismissal is live given Tenney's dismissal on May 9, 2013.  (*See* Order [16].)

*Twombly*, 550 U.S. at 555).  A complaint containing mere "labels and conclusions, or a formulaic recitation of the elements" is insufficient.  *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks omitted). Although courts are to accept all well-pleaded facts as true and view those facts in the light most favorable to the nonmoving party, courts are not required "to accept as true a legal conclusion couched as factual allegation."  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citation omitted).  Ultimately, the court's task "is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."  *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)), *cert. denied*, 133 S. Ct. 192 (2012).

### B.    Analysis

The Court now considers whether the claims asserted against Academy in the Amended Complaint [6-1] measure up to the preceding standard.  Cleland's malicious interference with employment allegation will not be considered since it was only asserted against Tenney, who has been dismissed from this litigation.  (*See* Order [16].)

### 1.    Defamation

Cleland asserts "that all pre-textual reasons put forward by Defendants for terminating . . . [him] are knowingly and intentionally false", and that his employment "record and reputation have now been permanently defamed and harmed . . . ."  (Am. Compl. [6-1] at ¶ 23.)  The following four elements must be proven in order for Cleland to recover on his defamation claim:

(1) a false and defamatory statement concerning the plaintiff; (2) an

> unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 65 (¶ 43) (Miss. Ct. App. 2011) (quoting *Simmons Law Group, P.A. v. Corp. Mgmt., Inc.*, 42 So. 3d 511, 517 (¶ 10) (Miss. 2010)), *cert. denied*, 94 So. 3d 290 (Miss. 2012).[3]  In the absence of bad faith or malice, an employer enjoys a qualified privilege as to communications concerning the termination of an employee made to any person having a legitimate and direct interest in the matter.  *See Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (¶ 20) (Miss. Ct. App. 2004) (citing *Young v. Jackson*, 572 So. 2d 378, 383 (Miss. 1990)).

Academy argues that Cleland has failed to plead requisite facts regarding "what false and defamatory statements were made, if any, whether there was a publication to a third party, and whether there was any negligence on behalf of the publisher."  (Def.'s Mem. Brief in Supp. of Mot. to Dismiss [7] at p. 12.)  Cleland's Response to the Motion to Dismiss [20] fails to address Academy's argument.  In fact, the only reference to Cleland's defamation claim in his response is the conclusory assertion that Academy's "defamatory reprimands" constitute tortious acts.  (Pl.'s Resp. to Mot. to Dismiss [20] at p. 13.)  The Court finds Academy's request for dismissal well taken based on this record.  The Amended Complaint [6-1] lacks sufficient factual content to permit "the court to draw the reasonable inference that" Academy is liable to Cleland for the tort of defamation.  *Ashcroft*, 556 U.S. at 678.

---

[3] The substantive law of Mississippi applies in this diversity action.  *See Specialty Rental Tools & Supply, LP v. Shoemaker*, 553 F.3d 415, 419 (5th Cir. 2008).

## 2.    Intentional Infliction of Emotional Distress

An action for intentional infliction of emotional distress requires the defendant's "conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Raiola*, 872 So. 2d at 85 (¶ 23).  Liability will not attach for mere insults, threats, indignities, petty oppression, annoyances, or other trivialities. *Jones v. Mullen*, 100 So. 3d 490, 499 (¶ 40) (Miss. Ct. App. 2012) (citing *Clark v. Luvel Dairy Prods., Inc.*, 821 So. 2d 827, 831 (¶ 9) (Miss. Ct. App. 2001)).  Furthermore, employment disputes will not ordinarily support an emotional distress claim.  *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (¶ 24) (Miss. 2001) (citations omitted).  "Only in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Brown v. Inter-City Fed. Bank for Savings*, 738 So. 2d 262, 265 (¶ 9) (Miss. Ct. App. 1999) (citing *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)).

Academy contends that Cleland has failed to allege facts sufficient to move this controversy out of "the realm of an ordinary employment dispute", stating a claim for intentional infliction of emotional distress.  (Def.'s Mem. Brief in Supp. of Mot. to Dismiss [7] at p. 7.)  Cleland's Response to the Motion to Dismiss [20] does not address this contention.  Notwithstanding Cleland's apparent concession of this request for dismissal, the Court finds that the Amended Complaint's intentional infliction of emotional distress claim relies too much on "labels and conclusions," and too little on "well-pleaded facts".  *Bowlby*, 681 F.3d at 219.  Accordingly, this claim is due to be

dismissed.

### 3.      Negligent Infliction of Emotional Distress, Negligent Retention/Supervision, and Negligence Per Se

Academy asserts that all of Cleland's negligence-based claims are barred by the exclusivity provision of the Mississippi Workers' Compensation Act (the "Act"). *See* Miss. Code Ann. § 71-3-9.  The Mississippi Supreme Court has long held that the Act's exclusivity provision covers claims made by an injured employee against his employer or any co-employee causing injury.  *See, e.g.*, *Christian v. McDonald*, 907 So. 2d 286, 290 (¶ 20) (Miss. 2005); *Sawyer v. Head*, 510 So. 2d 472, 476-77 (Miss. 1987); *Brown v. Estess*, 374 So. 2d 241, 242 (Miss. 1979).  Moreover, negligence allegations like those raised by Cleland in this lawsuit have consistently been found to fall within the scope of the Act.  *See, e.g.*, *Ford v. Madison HMA, Inc.*, 867 F. Supp. 2d 843, 849 (S.D. Miss. 2012) (finding claims of negligent infliction of emotional distress and negligent supervision, retention and hiring to be barred under the Act); *Bailey v. Cooper Lighting, Inc.*, No. 5:07cv196, 2008 WL 1868568, at *5 (S.D. Miss. Apr. 24, 2008) (same); *Seiferth v. Camus*, No. 4:03cv463, 2009 WL 3163327, at *1 (N.D. Miss. Sept. 29, 2009) (same as to negligence and negligence per se claims), *aff'd*, 377 Fed. Appx. 417 (5th Cir. 2010).  Cleland fails to present any contrary precedent or persuasive argument as to why the Act's exclusivity provision does not govern here.  Therefore, his negligence-based causes of action are also due to be dismissed.

### 4.      Discharge in Violation of Public Policy

Cleland alleges that he was discharged by Academy in violation of public policy

because:  (a) he reported illegal and unethical conduct and (b) he is a Republican.  (*See* Am. Compl. [6-1] at ¶ 32.)  It is undisputed that Cleland was an at-will employee of Academy with no express contract of employment.  Mississippi adheres to the employment-at-will doctrine.  *See Senseney v. Miss. Power Co.*, 914 So. 2d 1225, 1228 (¶ 8) (Miss. Ct. App. 2005) (citing *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 874 (Miss. 1981)).  Where there is no written employment agreement (or where an agreement does not specify the length of employment), the employment relationship is terminable at the will of either party.  *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987).  This "means that an employer may terminate an employee at any time for a good reason, a wrong reason, or no reason at all."  *Senseney*, 914 So. 2d at 1228 (¶ 8).

There are two exceptions to the employment-at-will doctrine recognized under Mississippi law.  *See McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993); *Bobbitt v. Orchard, Ltd.*, 603 So. 2d 356 (Miss. 1992).  In opposing Academy's request for dismissal of this claim, Cleland relies on the public policy exception identified in *McArn*, and requests that the Court recognize a new public policy exception when an employee is discriminated against because of his political affiliation.  (*See* Pl.'s Resp. to Mot. to Dismiss [20] at pp. 6-11.)  Cleland's breach of contract/good faith and fair dealing allegation, addressed in the next section of this opinion, is principally based on the case of *Bobbitt*.

### a. Whether the Amended Complaint States a Claim for Wrongful Discharge Under *McArn v. Allied Bruce-Terminix Co.*

In *McArn*, the Mississippi Supreme Court recognized "a narrow public policy

exception to the" doctrine of employment-at-will in two circumstances:

> (1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

626 So. 2d at 607.  An employee's subjective good faith belief that conduct is illegal is insufficient in either instance.  *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 403 (5th Cir. 2005).  The alleged conduct must actually constitute "criminally illegal activity".  *Id.* at 404.  Although *McArn* does not require that a crime already have been committed, it does require that the activities "complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties."  *Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So. 2d 357, 360 (¶ 11) (Miss. Ct. App. 2004) (citations omitted); *see also Howell v. Operations Mgmt. Int'l, Inc.*, 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001) (refusing to expand *McArn* to encompass acts giving rise to civil penalties under OSHA regulations), *aff'd*, 77 Fed. Appx. 248 (5th Cir. 2003).  The criminality of the conduct must be demonstrated via "'substantial evidence or citation to binding statutory and/or case law.'"  *Vaughn v. Carlock Nissan of Tupelo, Inc.*, No. 1:09cv293, 2011 WL 3651271, at *4 (N.D. Miss. Aug. 18, 2011) (quoting *Kyle v. Circus Circus Miss., Inc.*, 430 Fed. Appx. 247, 252 (5th Cir. 2011)).

Cleland argues that he is protected under both prongs of *McArn* because he refused to forge information on ATF Form 4473, and because he reported the criminal act to his employer.  (*See* Pl.'s Resp. to Mot. to Dismiss [20] at ¶ 19.)  Cleland further argues that Tenney violated section 97-1-1 of the Mississippi Code (conspiracy) and

section 97-1-7 of the Mississippi Code (attempt to commit a crime) when he requested that Cleland commit the crime of "forgery."  (Pl.'s Resp. to Mot. to Dismiss [20] at ¶ 20.) Mississippi Code sections 97-1-1 and 97-1-7 are not determinative of the *McArn* issue before the Court since their operation is dependent upon an underlying criminal act. Thus, Cleland's *McArn* claim will stand or fall on the adequacy of his "forgery" allegation.

The Mississippi Code criminalizes forgery in numerous contexts.  *See, e.g.*, Miss. Code Ann. §§ 97-21-1 (false entries or alterations in public account books), -3 (false entries or alterations in corporate account books), -29 (fraud upon person with same name), -35 (pleadings, process, orders or licenses), -51 (unauthorized use of name in communication), -59 (uttering counterfeit instruments).  Curiously, neither the Amended Complaint [6-1] nor Cleland's Response to the Motion to Dismiss [20] cites any of these provisions.  The Court's review of the preceding statutes and Mississippi case law leads to the conclusion that "fraudulent intent" or, stated differently, "intent to defraud" is an essential element of the crime of forgery.  *See, e.g.*, *Nelson v. State*, 32 So. 3d 534, 537 (¶ 6) (Miss. Ct. App. 2009); *Tel. Man, Inc. v. Hinds County*, 791 So. 2d 208, 210 (¶ 11) (Miss. 2001); *Rowland v. State*, 531 So. 2d 627, 630 (Miss. 1988); *Smith v. State*, 220 Miss. 67, 70 So. 2d 56, 57 (Miss. 1954).

The Amended Complaint is woefully lacking of any facts leading to the reasonable inference that Tenney intended to defraud anyone (i.e., that he intended to cause injury or loss by trickery or deceit)[4] when he purportedly "asked Cleland to forge

---

[4] *See United States v. Edmonson*, 175 F. Supp. 2d 889, 893 (S.D. Miss. 2001) ("The term 'defraud' is defined as the taking or withholding of 'some possession, right, or

information on ATF Form 4473 . . . ."  (Am. Compl. [6-1] at ¶ 14.)  Tenney's motivation,

good or bad, in making this request of Cleland is left to the reader's imagination.

Cleland's opposition to dismissal sheds light on this issue, but that light furthers

Academy's request for dismissal.  Cleland explains his forgery allegation as follows:

> Ordinarily, where a mistake or error is made on a 4473 [Form], Academy is
> required to contact the customer to come back in and correct the error.  From
> time to time, the "error" stack would become so high that substantial work
> was required to have the errors corrected by customers.  In lieu of contacting
> the numerous customers, Tenney requested that Cleland simply correct the
> errors himself and to forge the customers' information.

(Pl.'s Resp. to Mot. to Dismiss [20] at ¶ 7.)

It is implausible that Tenney intended to injure anyone by trickery or deceit in

requesting that Cleland correct customer errors on ATF Forms.  Instead, it appears that

Tenney's aim was to clear a backlog of paperwork in a short period of time by not

requiring customers to return to the store to make the subject corrections.  Overlooking

the wisdom *vel non* of this activity, the allegations of the Amended Complaint fall short

of evincing any criminal "forgery" under Mississippi law.  Therefore, Cleland's reliance

on *McArn* in support of his wrongful discharge claim is not well taken.

### b.  Whether the Amended Complaint States a Claim for Wrongful Discharge Based on Interference with Cleland's Political Rights

Cleland relies on the following Mississippi authorities in requesting that the Court

declare a public policy exception based on Academy's alleged interference with his

---

interest by calculated misstatement or perversion of truth, trickery, or other deception.'")
(quoting *Webster's Third New International Dictionary* 593 (1986)), *aff'd*, 57 Fed. Appx.
212 (5th Cir. 2003); *Black's Law Dictionary* 434 (7th ed. 1999) (defining "defraud" as the
act of causing "injury or loss to (a person) by deceit").

political rights:  (1) article 7, section 191 of the Mississippi Constitution;[5] (2) section 79-1-9 of the Mississippi Code;[6] and (3) section 23-15-871 of the Mississippi Code.[7]  Article

---

[5] "The legislature shall provide for the protection of the employees of all corporations doing business in this state from interference with their social, civil, or political rights by said corporations, their agents or employees."  Miss. Const. art. 7, § 191.

[6] "Any corporation doing business in this state shall be liable to a penalty of two hundred fifty dollars ($250.00) for every unlawful interference with the social, civil, or political rights of any of its agents or employees, and the same may be recovered by suit, to be brought by the injured party."  Miss. Code Ann. § 79-1-9.

[7] "It shall be unlawful for any corporation or any officer or employee thereof, or any member of a firm, or trustee or any member of any association, or any other employer, to direct or coerce, directly or indirectly, any employee to vote or not to vote for any particular person or group of persons in any election, or to discharge or to threaten to discharge any such employee, or to increase or decrease the salary or wages of an employee, or otherwise promote or demote him, because of his vote or failure to vote for any particular candidate or group of candidates; and likewise it shall be unlawful for any employer, or employee having the authority to employ or discharge other employees, to make any statement public or private, or to give out or circulate any report or statement, calculated to intimidate or coerce or otherwise influence any employee as to his vote, and when any such statement has obtained circulation, it shall be the duty of such employer to publicly repudiate it, in the absence of which repudiation the employer shall be deemed by way of ratification to have made it himself. Nor shall any employee be requested, directed or permitted to canvass for or against any candidate or render any other services for or against any candidate or group of candidates, during any of the hours within which the salary of said employee as an employee is being paid or agreed to be paid; nor shall any such employee be allowed any vacation or leave of absence at the expense of the employer to render any service or services for or against any candidate or group of candidates, or to take any active part in any election campaign whatsoever; nor shall any employee at the expense, in whole or in part, of any employer take any part whatever in any election campaign, except the necessary time to cast his vote. *The prohibitions of this section shall apply to all state, state district, county and county district officers, and to any board or commission and the members thereof by whatever name designated and whether elective or appointive, and to each and every one of those employed by them or any of them.* And no state, state district, county or county district officer, or any employee of any of them who directly or indirectly has the control, or in any way the power of control,

7, section 191 is not self-executing and fails to support a cause of action for wrongful termination under Mississippi law.  *See Cooper v. Drexel Chem. Co.*, 949 F. Supp. 1275, 1282 (N.D. Miss. 1996).  Section 79-1-9 clearly authorizes a private right of action by an aggrieved employee for $250.00.  However, the Fifth Circuit has rejected the argument "that this section should be construed as a general wrongful discharge statute, essentially supplanting Mississippi's employment at will doctrine."  *Bradley v. Lockheed Martin Corp.*, 275 Fed. Appx. 396, 398 (5th Cir. 2008); *see also Price v. Lockheed Martin Corp.*, 261 Fed. Appx. 761, 764  (5th Cir. 2008) (affirming the district court's ruling that an at-will employee lacked any social, civil or political rights subject to violation through the termination of her employment).[8]  It is unclear whether section 23-15-871 applies outside the realm of public employment.  Employees of Mississippi counties are the subject of the two (2) cases identified by this Court referencing this

---

or who asserts or pretends that he has such power, over the expenditure of any public funds in this state, whatever the purpose or object of said expenditure may be, shall state, suggest or intimate, publicly or privately, or in any manner or form, that any such expenditure shall in any wise depend upon or be influenced by the vote of any person, group of persons, or community or group of communities, whether for or against any candidate or group of candidates at any election. *This section and every part of it shall apply also to all federal officers, agents, employees, boards and commissions by whatever name known and to each and every one of those employed by them or any of them, as to any interference by them or any of them, contrary to the provisions of this chapter, in the elections of this state.*"  Miss. Code Ann. § 23-15-871 (emphasis added).

[8] Although *Bradley* and *Price* are unpublished, they are still persuasive.  *See Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 893 (5th Cir. 2013) (citing an "unpublished but persuasive" Fifth Circuit opinion).

statute.[9]  In any event, no authority has been identified recognizing an at-will

employee's claim for wrongful termination based on a violation of section 23-15-871.

It is this Court's task to apply Mississippi law, not to make it.  Consequently, the

Court declines Cleland's request for it to act effectively as the Mississippi Legislature or

Mississippi Supreme Court and establish a new public policy exception to Mississippi's

longstanding employment-at-will doctrine based on interference with political rights.[10]

There is also no procedural mechanism available for the Court to grant Cleland's

alternative request to certify this issue to the Mississippi Supreme Court.[11]  Ultimately,

the Amended Complaint fails to state a cognizable claim for wrongful discharge under

current Mississippi law.

---

[9] *See Beattie v. Madison County Sch. Dist.*, 254 F.3d 595 (5th Cir. 2001); *Straughter v. Collins*, 819 So. 2d 1244 (Miss. 2002).  Mississippi Attorney General Opinions discussing this statute also concern governmental employees.  *See* Miss. A.G. Op. No. 2003-0336 (July 18, 2003), 2003 WL 21962298; Miss. A.G. Op. No. 2000-0042 (Feb. 11, 2000), 2000 WL 300226; Miss. A.G. Op. No. 98-0114 (Mar. 6, 1998), 1998 WL 156071.

[10] *Cf. Wheeler*, 415 F.3d at 404 ("To assist Appellants in broadening the scope of what the Mississippi Supreme Court and this Court have continually recognized as a 'narrow public policy exception,' . . . would serve to envelope a much wider class of activities-a broadening that is at odds with the intent of the Mississippi Supreme Court when it first created the [*McArn*] exception."); *Medina v. Mims Oil Co.*, No. Civ.A. 4:04cv236, 2005 WL 1629800, at *1 (N.D. Miss. July 11, 2005) (rejecting the plaintiff's request for a new public policy exception in support of her wrongful termination claim since the authority to make new law rested solely with the Mississippi Legislature); *Cook v. Wallot*, No. 2011-CA-01056-COA, 2013 WL 1883533, at *6 (¶¶ 29-30) (Miss. Ct. App. May 7, 2013) (refusing to extend *McArn* to a former organization member's claim for unlawful retaliation/whistle-blowing, and noting that such an extension would have to be made by the Mississippi Supreme Court).

[11] Mississippi Rule of Appellate Procedure 20 only authorizes the Mississippi Supreme Court to answer certified questions from the United States Supreme Court or any United States Court of Appeals.  *See* Miss. R. App. P. 20(a).

### 5.        Breach of Contract/Good Faith and Fair Dealing

Mississippi's employment-at-will doctrine generally precludes employee suits for breach of contract or breach of the implied covenant of good faith and fair dealing. *See Cooper*, 949 F. Supp. at 1282; *Young v. N. Miss. Med. Ctr.*, 783 So. 2d 661, 663 (¶ 9) (Miss. 2001). In *Bobbitt*, however, the Mississippi Supreme Court held that when an employer furnishes its employees a detailed manual setting forth its rules of employment and the procedures to be followed in the event that an employee violates its rules, the manual creates a contractual obligation on the part of the employer to follow its provisions in disciplining an employee for rules infractions specifically covered by the manual. 603 So. 2d at 361. Cleland's Amended Complaint appears to rely on *Bobbitt* via the allegation that "Academy was required to follow certain policies and procedures in handling the matters complained of by Cleland and in terminating Cleland's employment." (Am. Comp. [6-1] at ¶ 34.)

The Court finds that Cleland's allegations are insufficient "to raise a right to relief above the speculative level." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210. Absent from the Amended Complaint is any description of "a detailed manual" furnished to Academy employees, setting forth procedures to "be followed in event of infraction of . . . [Academy's] rules of employment . . . ." *Bobbitt*, 603 So. 2d at 361. Much less does Cleland specify how Academy failed to follow such procedures "in reprimanding, suspending or discharging" him. *Id.*

Cleland's opposition to dismissal is somewhat more descriptive of his claim under *Bobbitt*. Cleland asserts that Academy was obligated to follow the provisions of its employee handbook in reprimanding and disciplining him, and that "Defendant wholly

-15-

failed to do so." (Pl.'s Resp. to Mot. to Dismiss [20] at ¶ 35.) Cleland explains that he is

not in possession of the employee handbook, but asserts on information and belief that

"Defendant failed to follow the same guidelines which Defendant alleged Cleland failed

to follow." (Pl.'s Resp. to Mot. to Dismiss [20] at ¶ 37.) Plausible facts giving rise to

Cleland's belief that he and his employer were required to follow the same guidelines

are unstated. Even if these conclusory and speculative contentions were contained in

the Amended Complaint, the pleading would fail to survive Rule 12(b)(6) scrutiny. *See*

*Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (declining to accept as true, for

purposes of Rule 12(b)(6), an allegation stated "upon information and belief" in the

absence of sufficient facts lending plausibility to the allegation), *cert. denied*, 133 S. Ct.

1752 (2013); *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210 ("We do not accept

as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").[12]

Cleland's reliance on the case of *University of Southern Mississippi v. Williams*,

891 So. 2d 160 (Miss. 2004), in support of his allegation that Academy breached a duty

of good faith and fair dealing is misplaced. (*See* Am. Compl. [6-1] at ¶ 35.) In *Williams*,

a doctoral candidate brought suit alleging that the University breached an implicit and

explicit contract whereby she paid the University a significant monetary sum in

---

[12] The Court also finds the Amended Complaint devoid of facts sufficient "'to raise a reasonable expectation that discovery will reveal evidence of'" Academy's violation of policies and procedures giving rise to a *Bobbitt* claim. *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft*, 556 U.S. at 678-79. Moreover, it is untenable that "Cleland relied upon the employee handbook and expected" Academy to follow it when he needs discovery to "cite exactly what portions of the handbook Defendant failed to follow." (Pl.'s Resp. to Mot. to Dismiss [20] at ¶¶ 42, 43.)

-16-

exchange for the opportunity to pursue her academic endeavors free from harassment. 891 So. 2d at 169 (¶ 18).  In reviewing the plaintiff's claim, the court noted "that the student/university relationship is contractual in nature . . . ."  *Id.* at (¶ 21).  The court then found sufficient evidence for the jury to conclude that the University and its employees breached the duty of good faith and fair dealing in their dealings with the plaintiff.  *Id.* at 171 (¶ 25).  The evidence showed that "USM and its employees knowingly conducted themselves in ways which violated standards of decency, fairness, and reasonableness."  *Id.* at (¶ 26).  For example, the plaintiff claimed that one of her professors impeded her progress through the doctoral program because she refused to engage in sexual relations with him.  *Id.* at (¶ 28).  The court specifically noted that its holding was "very fact specific" and "narrowly written".  *Id.* at 167 (¶ 13).

*Williams*' narrow holding regarding a breach of the duty of good faith and fair dealing in the context of a student/university relationship has no application in this employment dispute.  Although numerous Mississippi cases "state that all contracts contain an implied duty of good faith and fair dealing, [the Supreme Court] has never recognized a cause of action based on such a duty arising from an employment at-will relationship."  *Miranda v. Wesley Health Sys., LLC*, 949 So. 2d 63, 68 (¶ 19) (Miss. Ct. App. 2006) (citation omitted), *cert. denied*, 949 So. 2d 37 (Miss. 2007).  To view the validity of the termination of an at-will employment relationship through a good faith lens would essentially nullify the principle that an at-will employee may be fired for a good reason, a bad reason or no reason at all.  *Id.*  Cleland's breach of good faith allegation fails in light of the undisputed at-will nature of his prior employment with Academy.  "It is well established under Mississippi law that an at-will employee is precluded from

bringing such a cause of action." *Crawford v. Bannum Place of Tupelo*, No. 3:10cv54, 2013 WL 104963, at *7 (N.D. Miss. Jan. 8, 2013) (citing *Hartle v. Packard Elec.*, 626 So. 2d 106, 110 (Miss. 1993); *Porter v. Tunica Co.*, 2012 WL 113741, at *6 (N.D. Miss. Jan. 13, 2012)); *see also Young*, 783 So. 2d at 663 (¶ 9).

For the foregoing reasons, Academy's request for dismissal of all of the claims asserted against it in the Amended Complaint will be granted.

## II.    Cleland's Motion for Leave [17]

Cleland seeks leave to file a Second Amended Complaint [17-1] "to add factual support for the pretextual reprimands made by Tenney to cause Academy to terminate Cleland." (Pl.'s Mot. for Leave [17] at ¶ 3.) Cleland's proposed Second Amended Complaint [17-1] contains the same causes of action as the Amended Complaint [6-1], and again names Tenney as a Defendant. Academy opposes the motion because of Tenney's prior dismissal and because the proposed amended pleading encompasses the same issues complained of in the Motion to Dismiss [6].

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Moreover, a court should ordinarily provide a claimant an opportunity to amend his complaint prior to granting a motion to dismiss with prejudice under Rule 12(b)(6). *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citations omitted). Yet, the district "court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).

The Court determines that allowing Cleland to file his proposed Second Amended Complaint [17-1] would be an exercise in futility as to Academy. Cleland's proposed amended pleading contains no new causes of action. Furthermore, all of the additional fact allegations are geared toward shoring up Cleland's malicious interference claim, which is only asserted against Tenney. Thus, the above findings on Academy's request for dismissal of the Amended Complaint [6-1] apply equally to Cleland's proposed Second Amended Complaint [17-1]. Cleland had adequate time to prepare an amended pleading meeting the deficiencies identified by Academy in its dismissal motion given the period of approximately three months between the filing of the Motion to Dismiss [6] and the Motion for Leave [17]. His failure to do so leads the Court to conclude that justice does not compel a grant of his request for leave to amend. *See Duzich v. Advantage Fin. Corp.*, 395 F.3d 527, 529, 531 (5th Cir. 2004) (affirming the district court's grant of a motion to dismiss with prejudice and denial of a motion for leave to file an amended complaint where any amendment would have been futile); *United States v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (finding no abuse of discretion in the lower court's ruling that "[o]ne opportunity to amend, in the face of motions that spelled out the asserted defects in the original pleadings, was sufficient under the circumstances").

As to Tenney, Cleland has failed to identify and brief the appropriate standard for leave to amend. Cleland and Tenney are both citizens of Mississippi. (*See* Notice of Removal [1] at ¶ 13; Am. Compl. [6-1] at ¶¶ 1, 3.) Bringing Tenney back into the lawsuit would thus result in incomplete diversity of citizenship between the parties and deprive

the Court of jurisdiction under 28 U.S.C. § 1332.  Title 28 U.S.C. § 1447(e),[13] as

opposed to Rule 15, governs a district court's consideration of a request for joinder of a

non-diverse defendant.  *See White v. City Fin. Co.*, 277 F. Supp. 2d 646, 650 n.7 (S.D.

Miss. 2003).  "The district court must scrutinize an amendment [to a pleading] that

would add a non-diverse party more closely than an ordinary amendment."  *Priester v.

JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013) (citation and internal

quotation marks omitted).  The Fifth Circuit has identified the following considerations to

guide a district court's scrutiny of an amendment that would join non-diverse parties:

"[1] the extent to which the purpose of the amendment is to defeat federal jurisdiction,

[2] whether plaintiff has been dilatory in asking for amendment, [3] whether plaintiff will

be significantly injured if amendment is not allowed, and [4] any other factors bearing on

the equities."  *Id.*  The Motion for Leave [17] addresses none of these factors.

Ordinarily, the Court would defer ruling on the joinder of a non-diverse defendant

pending briefing from the parties addressing the above-listed factors.  However, this

case presents the unusual circumstance of a plaintiff attempting to add a non-diverse

defendant that was previously dismissed without prejudice to a suit where the plaintiff

cannot state a claim against the existing defendant.  (*See* Order [16].)  If the Court were

to grant the Motion for Leave [17], it would have to remand Cleland's suit against

Tenney due to an absence of subject matter jurisdiction.  *See* 28 U.S.C. § 1447(e).  If

the Court were to deny the motion, the prior dismissal of Tenney without prejudice

---

[13] "If after removal the plaintiff seeks to join additional defendants whose joinder
would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder
and remand the action to the State court."  28 U.S.C. § 1447(e).

would remain in place and Cleland could obtain the effective result of a remand by refiling his claims against Tenney in state court.  The Court finds the denial of Tenney's request for leave to amend without further delay to be the soundest and most expeditious method of resolving this issue under this unique set of circumstances. Accordingly, the Motion for Leave [17] will be denied.

## **CONCLUSION**

IT IS THEREFORE ORDERED AND ADJUDGED:

1.     That Academy's Motion to Dismiss [6] is granted and Plaintiff's claims against Academy are dismissed with prejudice.

2.     That Plaintiff's Motion for Leave [17] is denied.

3.     A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 26th day of August, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE